IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN KLANCHAR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 3:24-74 |
| UPPER YODER TOWNSHIP ) | Judge Stephanie L. Haines |
| SUPERVISORS, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**OPINION**

This is a civil rights action brought by John A. Klanchar ("Plaintiff"), pro se, under the First Amendment right to free speech and the Pennsylvania Sunshine Act right to participate in a public forum. Plaintiff brings this action against Upper Yoder Township Supervisors (the entity or group), Ed Barzeski, President Supervisor of Upper Yoder Township ("President Supervisor Barzeski"), Sue Konvolinka, Upper Yoder Township Supervisor ("Konvolinka"), Kyle Shaffer, Upper Yoder Township Supervisor ("Shaffer"), Robert Amistadi, Upper Yoder Township Supervisor ("Amistadi"), Paul Pioli, Upper Yoder Township Supervisor ("Pioli"), and David Raho, Shahade & Shahade Solicitor ("Solicitor Raho") (collectively, "Defendants"). All parties were in their respective roles at the time of the incident.

**I.    Factual Background and Procedural History**

At Upper Yoder Township Board of Supervisors meetings, the Board requires attendees of meetings to abide by Resolution #963 (the "Resolution"), which serves as a guideline for how a member of the public may go about addressing the Board. In relevant part, the Resolution advises that a community speaker shall not make a personal attack or a statement of obscene or defamatory

nature. (ECF No. 1-3 ¶13). Further, the Resolution states that community speakers are to "abide by the directive of the [Board] Chairman with respect to maintenance or order and conduct of the meeting" and make comments free of obscenity or threat. (*Id.* ¶¶ 15, 16).

The Resolution also addresses how a community member may record the meetings. It states in pertinent part that "all video recording equipment shall be stationed in the rear of the meeting room or along the wall or other such location so as not to obstruct the view of any audience member[,]" but that audio recording devices are permitted in the general area. (*Id.* ¶¶ 18, 19) (emphasis omitted). Those who use recording equipment of either kind must not move around the room with the equipment during the meeting. (*Id.* ¶ 20).

On February 15, 2024, Plaintiff attended an Upper Yoder Township Board of Supervisors (the "Board") meeting where he was slated to have approximately three minutes to address the Board. Plaintiff set up a tripod and cellphone in the back of the meeting room for recording purposes. (*Id.* ¶ 33). While seated in the general area, Plaintiff also had an audio recording device and a camera in the style of a bodycam that captured audio and video. (*Id.* ¶¶ 15, 16, 35-37).

After brief communication between President Supervisor Barzeski and Plaintiff which addressed the cellphone and tripod in the back of the room, Konvolinka, Solicitor Raho, and President Supervisor Barzeski questioned Plaintiff about the bodycam, to which Plaintiff offered no response. (*Id.* at 12). President Supervisor Barzeski instructed Plaintiff to go to the back of the room, and Plaintiff refused. President Supervisor Barzeski promptly had Plaintiff escorted from the meeting area for being disruptive. (*Id.* at 16)

Following the factual events of this case, Plaintiff filed an Initial Complaint (ECF No. 1-3) ("Initial Complaint") in the Cambria Court of Common Pleas (Case Number 2024-0952). The Initial Complaint listed Upper Yoder Township Supervisors as the only defendant. *See id.* Upper

Yoder Township Supervisors was properly served (ECF No. 6). Defendants removed the case from Cambria County to this Court on April 9, 2024 (ECF No. 1). Plaintiff filed an Amended Complaint ("Amended Complaint") (ECF No. 10) on August 6, 2024.[1] The Amended Complaint added the named Defendants in addition to the Upper Yoder Township Supervisors. *See id.* Defendants then filed the pending Motion to Dismiss (ECF No. 12) and Motion for a More Definite Statement (ECF No. 14), with accompanying Memorandums in Support (ECF Nos. 13, 15). Thereafter, Plaintiff filed his Response Briefs (ECF Nos. 27-28). Accordingly, the Motions are fully briefed and ripe for disposition.

## II.     Standard of Review

### a. Motion to Dismiss for Insufficient Service of Process

Federal Rule of Civil Procedure 12(b)(5) provides that a defendant may move to dismiss when a plaintiff fails to effectuate proper service. Fed. R. Civ. P. 12(b)(5). The Court may not exercise jurisdiction over a defendant who has not been properly served, nor may the action against the defendant proceed. *See U.S. ex rel. Thomas v. Siemens AG*, 708 F. Supp. 2d 505, 516 (E.D. Pa. 2010) (citing *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant."). It is the burden of the party asserting validity of service to demonstrate that service was proper. *See id.* at 519 (citing *State Farm Mut., Auto. Ins. Co. v. Tz'Doko V'Chesed of Klausenberg*, 543 F.Supp.2d 424, 428 (E.D.Pa.2008)).

---

[1] In the filings succeeding the Amended Complaint, both parties reference the Amended Complaint and Initial Complaint as the Amended Complaint incorporates by reference the Initial. The Court will consider the Initial Complaint (ECF No. 1-3) and the Amended Complaint (ECF No. 10) together as the Operative Complaint. Any reference to one complaint will be a reference to the Operative Complaint.

3

Upon determining "that process has not been properly served on a defendant, district courts possess broad discretion to either dismiss the plaintiff's complaint for failure to effect service" or to "exercise its discretion to order that service be made within a specific time[.]" *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992); *See Zavalunov v. White*, No. 3:18-CV-2438, 2020 WL 1034848 at *2 (M.D. Pa. Mar. 2, 2020). However, Federal Rule of Civil Procedure 4(m) provides that "if the plaintiff shows good cause for the failure [to effectuate service], the court must extend the time for service[.]" Fed. R. Civ. P. 4(m).

The Third Circuit has developed a two-pronged inquiry to determine whether an extension of time would be appropriate under Rule 4(m). First, "the court must determine whether good cause exists for the failure to have effected service in a timely manner. If so, the extension must be granted." *McCurdy v. Am. Bd. of Plastic Surgery*, 157 F.3d 191, 196 (3d Cir. 1998) (citing *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1098 (3d Cir.1995); *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir.1995)).

> Courts have considered three factors in determining the existence of good cause: (1) reasonableness of plaintiff's efforts to serve; (2) prejudice to the defendant by lack of timely service; and, (3) whether plaintiff moved for an enlargement of time to serve[]. We have equated 'good cause' with the concept of 'excusable neglect' of Federal Rule of Civil Procedure 6(b)(2), which requires 'a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules.'

*MCI Telecommunications Corp.*, 71 F.3d at 1097 (citing *United States v. Nuttall*, 122 F.R.D. 163, 166–67 (D.Del.1988)) (quoting Fed. R. Civ. P. 6(b)(2)).

Second, "[i]f good cause is not shown, the district court may, in its discretion, decide whether to dismiss the case without prejudice or extend the time for service. And 'the district court must consider whether any other factors warrant extending time even if good cause was not shown.'" *Cain v. Abraxas*, 209 F. App'x 94, 96 (3d Cir. 2006) (quoting *Petrucelli*, 46 F.3d at 1305,

4

1307) (internal citation omitted). The Third Circuit "suggests that the following factors … should be used to assist a district court in determining whether a discretionary extension is warranted: (1) if the applicable statute of limitations would bar the refiled action; (2) if the defendant is evading service or concealing a defect in attempted service; and (3) if the plaintiff is appearing pro se." *Gonzalez v. Thomas Built Buses, Inc.*, 268 F.R.D. 521, 527 (M.D. Pa. 2010) (citing *Petrucelli*, 46 F.3d at 1305–06).

In addition to the two-prong test, the Third Circuit provides that, "when there is a 'reasonable prospect' that service may be obtained, dismissal of the complaint is 'inappropriate.'" *U.S. ex rel. Thomas*, 708 F. Supp. 2d at 516 (quoting *Umbenhauer*, 969 F.2d at 30). In such a circumstance, "the district court should, at most, quash service, leaving the plaintiffs free to effect proper service." *Umbenhauer*, 969 F.2d at 30.

### b. Motion to Dismiss for Failure to State a Claim (Pleading Sufficiency)

A complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to overcome a Rule 12(b)(6) motion the complaint must contain sufficient facts to prove plausibility. *See Ashcroft v. Iqbal*, 555 U.S. 662, 678 (2009); *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the facts give way for the court to conjecture that the defendant is liable for the alleged misconduct. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Plausibility is context-specific and must not be mistaken to be as extensive as probability, nor as sheer as possibility. *See id.* at 786.

In reviewing a Rule 12(b)(6) motion, the court must abide by the three steps established in *Twombly* and *Iqbal*. First, the Court must note the elements which the plaintiff must plead to state a claim. *See Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are

5

no more than conclusions [or restatements of the elements], are not entitled to the assumption of truth." *Id.* at 679. Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679 (adopted by the Third Circuit in *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) [quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)]).

In this case, Plaintiff is proceeding pro se, which generally allows a less stringent review standard than what would be applied to a counseled pleading. *See Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Despot v. Allied Interstate, Inc.*, No. CV 15-15, 2016 WL 4593756 at *4 (W.D. Pa. Sept. 2, 2016). Even so, "pro se litigants still must allege sufficient facts in their complaints to support a claim" in compliance with *Twombly*. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

**c. Motion for a More Definite Statement (Complaint Sufficiency)**

Federal Rule of Civil Procedure 12(e) permits a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Because Federal Rule of Civil Procedure 8(a)(2) provides that a complaint need only contain a "short and plain statement of the claims showing that the pleader is entitled to relief," the power to grant motions for a more definite statement is "a power which is not to be exercised lightly, for it forecloses inquiry into the merits of the action." *Schaedler v. Reading Eagle Publication, Inc.*, 370 F.2d 795, 798 (3d Cir. 1967). In such a case where a plaintiff is filing pro se, the court is instructed to recognize that dismissal of a claim resulting from a pro se plaintiff's unfamiliarity

6

with the court should be a "last resort." *Id.* at 798-799 (finding that a pro se plaintiff who submitted an inarticulate but meritorious filing in good faith should be entitled to the opportunity to amend).

### III. Discussion

As a preliminary matter, the Court notes that in the Amended Complaint Plaintiff has incorporated by reference the Initial Complaint (ECF No. 1-3). (ECF No. 10 ¶¶ 18, 19). It is established that "an amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *Despot v. Allied Interstate, Inc.*, No. CV 15-15, 2016 WL 4593756, at *4 (W.D. Pa. Sept. 2, 2016) (quoting *Dickerson v. Brooks*, No. 06-CV-289, 2009 WL 615410, at *6 (W.D. Pa. Jan. 8, 2009)) (internal quotations omitted). Given that Plaintiff is filing pro se and appears to have expanded upon the Initial Complaint, this Court will recognize the facts and procedural history of the Initial Complaint as well as the legal argument contained therein. The complaints together will be recognized as the Operative Complaint.

#### a. Motion to Dismiss for Insufficient Service of Process

In the Memorandum in Support of Defendants' Motion to Dismiss (ECF No. 13), Defendants argue in succinct reasoning that no summons has been issued to Defendants after they were named individually, nor has service been effected. (ECF No. 13 at 4). Plaintiff's equally concise Response to Defendants' Motion to Dismiss (ECF No. 27) counters that Defendants were made aware of this action when it was initially filed in Cambria County and Upper Yoder Township Supervisors as an entity was served via Certified Mail. *Id.* ¶ 8. Service was not properly effected on the named Defendants because Plaintiff believed that the proper service of Upper Yoder Township Supervisors constituted service on the named Defendants. Plaintiff incorrectly believed that "Defendants [were] well aware of suit and properly served via Certified Mail when

suit was filed in County Court." (ECF No. 27 ¶ 8). It appears that Plaintiff was mistaken in his understanding that a defendant may be sued in their official or individual capacity interchangeably.

Given the facts of the case and the memoranda of the parties, it is clear to the Court that Plaintiff did not properly serve the named Defendants after the Amended Complaint was filed. The Third Circuit set out a two-pronged test to ascertain whether an action should be dismissed for failure to serve or whether a plaintiff should be given leave to properly serve a defendant. The first element of the test is whether Plaintiff showed good cause for lack of proper service. If the first element is not met, the second element to be determined is whether the court may exercise its discretion to grant the plaintiff the opportunity to properly serve the defendant. This Court must determine whether Plaintiff showed good cause to excuse his lack of service under the first prong. If not, is it within the discretion of the Court to grant an extension of time for service under the second prong. Alternatively, the Court may consider whether there is a reasonable prospect that service may yet occur.

**i. Plaintiff did not show good cause for lack of service.**

While the Court understands that Plaintiff mistakenly believed that service was proper because he changed the Defendants from their official title to individual name, ignorance of procedure does not amount to good cause. *See Sykes v. Blockbuster Video*, 205 F. App'x 961 (3d Cir. 2006) (finding that pro se plaintiff's misunderstanding of the procedure of service is not good cause). In *MCI Telecommunications Corp. v. Teleconcepts, Inc.*, the Third Circuit equated "good cause" with "excusable neglect" in Federal Rule of Civil Procedure 6(b)(2). 71 F.3d 1086, 1097 (3d Cir.1995). Excusable neglect is defined as "a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules." *Id.* (quoting *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1312 (3d

Cir.1995)) (internal quotation marks omitted). The Third Circuit has used three factors to evaluate whether a plaintiff had good cause: (1) reasonableness of plaintiff's efforts to serve the defendant (2) prejudice to Defendants by lack of timely service and (3) whether plaintiff moved for an extension of time to serve. *See id.* Although Plaintiff may have innocently misunderstood the process, he by all accounts did not research or make a good faith effort to properly effect service. This cannot amount to good cause for lack of service. He made no reasonable effort to serve Defendants, and there was no recognition by Plaintiff of failure to serve or request for extension to achieve proper service.

First, it must be determined whether Plaintiff made reasonable efforts to serve the named Defendants. The case docket indicates that Defendant Upper Yoder Township Supervisors was properly served in April 2024. (ECF No. 6). However, following the naming of the additional Defendants, Plaintiff did not make any efforts to serve the Defendants individually. It is clear that Plaintiff knew how to properly effect service but simply failed to do so with regard to Defendants. Therefore, it is evident that Plaintiff did not make reasonable efforts to serve Defendants.

Second, the Court will consider whether there is prejudice to Defendants by lack of timely service. As in any action, a defendant may become prejudiced by lack of timely service as a claim becomes stale. *See Gonzalez v. Thomas Built Buses, Inc.*, 268 F.R.D. 521, 527 (M.D. Pa. 2010). However, it has been approximately thirteen months since Defendants were named in the Amended Complaint, making it doubtful that Defendants would be unable to defend against Plaintiffs claims.[2] *See id.,* (holding that "is not likely that a delay of a few months—one that defendants could have avoided by waiving service in the first place—would grossly affect defendants [*sic*] ability to defend [a] case on its merits").

---

[2] Lack of prejudice alone is never sufficient to constitute good cause; lack of service must be supported by other contributing factors. *See MCI Telecommunications Corp.,* 71 F.3d at 1097.

Finally, Plaintiff has made motions for extensions of time (ECF Nos. 8, 20) for reasons unrelated to service. It is evident that Plaintiff is aware of the procedure for motions for extension of time but did not seek out one in relation to service. It therefore cannot be said that Plaintiff has made efforts to extend time for service. In consideration of these three factors, it is clear that Plaintiff has failed to show good cause under Rule 4(m).

### ii. In consideration of Plaintiffs pro se status, the Court will use its discretion to allow Plaintiff to properly serve Defendants.

The second prong of the Third Circuit's test for determining whether to dismiss for failure to serve or permit Plaintiff an additional opportunity allows the Court to use its discretion to extend time for service when good cause for lack of service is not proven. Although case law does not provide an exhaustive list of defensible reasons to exercise discretion, the Third Circuit and our sister courts have recognized the statute of limitations, a defendant's conduct, and pro se status as well-founded reasons to extend time for service. *See Petrucelli*, 46 F.3d at 1305–06; *Gonzalez*, 268 F.R.D. at 527; *Chiang v. U.S. Small Bus. Admin.*, 331 F. App'x 113, 115 (3d Cir. 2009).

Plaintiff's lack of legal knowledge cannot be considered an intentional act to prejudice or prolong the case. Plaintiff mistakenly believed that, because he properly served Upper Yoder Township Supervisors, all Defendants were legally notified of the case.[3] Given that Plaintiff is a pro se litigant, the Court will allow an extension of 60 days to effectuate service on Defendant President Supervisor Barzenski.

### iii. There is no reasonable prospect that service may still occur.

The final reason available to allow Plaintiff an extension of time to serve Defendants is if there is a "reasonable prospect" that service is likely to occur. If this circumstance is present, this

---

[3] The Court also recognizes that by virtue of the fact that Defendants are responding to and actively defending against Plaintiff's claims, they are on notice of this case and therefore, prejudice is unlikely.

10

Court would, at most, quash the service deadline so that Plaintiff may properly serve Defendants when the correct means becomes available.

Non-exhaustive environments in which there would be a "reasonable prospect" that service could still occur include a defendant not being a United States domicile, technical error that prevents service, or where a plaintiff serves an agent of a defendant. *See Mitchell v. Theriault*, 516 F. Supp. 2d 450, 457-58 (M.D. Pa. 2007); *Atzeni-Dandrea v. WVU Hosps.*, No. CV 2:20-583, 2020 WL 3573467 at *1 (W.D. Pa. June 30, 2020); *Porter v. AHP Settlement Tr.*, No. CV 20-3184, 2021 WL 719716 at *3 (E.D. Pa. Feb. 23, 2021), *aff'd sub nom. Porter v. A.H.P. Settlement Tr.*, No. 21-1567, 2021 WL 3161433 (3d Cir. July 27, 2021). Plaintiff does not argue, nor does this Court surmise, such a situation is the case here.

### b. Motion to Dismiss for Failure to State a Claim Upon Which Relief May be Granted

In the Memorandum in Support of Defendants' Motion to Dismiss (ECF No. 13), Defendants argue that Plaintiff "fails to set forth facts that Upper Yoder Township Supervisors, or Supervisors Barzeski, Konvolinka, Shaffer, Amistadi, and Pioli, and Solicitor David Raho, Shahade & Shahade, Solicitor, acted in a way that violated [Plaintiff's] First Amendment Rights." *Id*. at 5. Defendants add that Plaintiff named the individual Defendants in the Amended Complaint rather than Upper Yoder Township Supervisors because Plaintiff felt that the individuals acted as a group to violate his rights. *See id*. Defendants maintain that, even though Plaintiff alleged the individuals acted as a whole, Plaintiff "does not allege any facts to support his claim that any individual Defendant acted, in their personal capacity, individually or jointly, to violate his First Amendment rights." *Id*.[4]

---

[4] In addition to the Memorandum in Support of Defendants' Motion to Dismiss, Defendants attach the entirety of *Breslin v. Dickinson Twp.* as support for their claim. No. 1:09-CV-1396, 2012 WL 7177278 (M.D. Pa. Mar. 23, 2012), *report and recommendation adopted*, No. 1:09-CV-1396, 2013 WL 654491 (M.D. Pa. Feb. 21, 2013), *on reconsideration sub nom. Breslin v. Jones*, No. 1:09-CV-1396, 2016 WL 6962592 (M.D. Pa. Nov. 29, 2016). In

Plaintiff's Response to Defendants' Motion to Dismiss (ECF No. 27) lacks a cogent rebuttal of the plausibility of his claims. Plaintiff's Response is mostly directed at the Motion to Dismiss for Insufficient Service of Process with the bare assertion that the Amended Complaint does state a claim upon which relief may be granted. *Id.* at ¶13.

Plaintiff's claim is considered facially plausible when the facts of the case give way for this Court to reasonably conjecture that Defendants are liable for the alleged misconduct. In the Initial Complaint, Plaintiff brings the following causes of action: First Amendment free speech violation and Pennsylvania Sunshine Act ("PSA") violation under 65 Pa. C.S.A. s 710.1, both based on the Resolution and actions taken by the named Defendants at the Township meeting.

i.  **First Amendment**

Plaintiff claims that the restrictions of the Resolution violated the First Amendment free speech clause. To prove this Plaintiff must allege that the Resolution and the Defendants' actions were not valid time, place, or manner restrictions because they were not "viewpoint-neutral, [nor] narrowly tailored to serve the significant governmental interest in conducting orderly and efficient meetings of a public bodies, and [did not] [leave] open ample alternative channels of communication." *Monteiro v. City of Elizabeth*, 436 F.3d 397, 403 (3d Cir. 2006). Plaintiff alleges that the relevant parts of the Resolution are overly vague as to allow a Supervisor to show

---

*Breslin*, the plaintiffs were known activists who frequently attended township meetings. *Id.* at *6-7. Plaintiffs often were disruptive to meeting proceedings, including making personal attacks on the township supervisors. *See id.* Six months after a disagreement at a supervisor meeting the supervisors amended the public comment policy to include regulations akin to those in the Resolution. *See id.* at *7. Like the Resolution, the amended policy contained no viewpoint restrictions. *See id.*

As close as *Breslin* appears on the factual surface to the one at hand, Defendants belabor a point that is remote in its applicability to this case. At the motion to dismiss stage, the posture of this case, it is the Court's responsibility to ascertain if the claim is facially plausible. In *Breslin,* the Court evaluated the plaintiffs' likelihood of success on the merits. The court in *Breslin* sought to consider the evidence produced in discovery as applied to plaintiffs' claim to discern whether the plaintiffs produced a well-developed case that could surmount summary judgment. *Breslin's* applicability here is minimal at best.

viewpoint prejudice in a way that would solely serve personal interest. (ECF No. 1-3 at 14). This prejudice could be foreseen to close alternative channels of communication at the Supervisors will. *See id.* Thus, Plaintiff has stated that the Resolution was narrowly drafted which allows for prejudicial viewpoint interpretation that could close out alternative channels of communication. The Court finds Plaintiff has alleged a plausible claim of a violation of First Amendment free speech.

  ii. **Pennsylvania Sunshine Act (PSA)**

To allege a violation of the PSA for reasons related to recording, Plaintiff must claim that Defendants did not abide by the PSA's requirements. In relevant part, the PSA provides that "a person attending a meeting of an agency shall have the right to use recording devices to record all the proceedings. Nothing in this section shall prohibit the agency from adopting and enforcing reasonable rules for their use under section 710 (relating to rules and regulations for conduct of meetings)." (ECF No. 1-3 ¶ 98) (quoting 65 Pa. C.S.A. s 711(a)). Plaintiff acknowledges that the Resolution "does provide reasonable rules for the use of video recording equipment[.]" *Id.* ¶ 99. Given Plaintiff's concession and the Court's own finding that recording devices were permitted during Board meetings under the guidelines of reasonable rules, Defendants did not violate the PSA. Plaintiff was removed from the meeting because he had a body camera and did not move to the back of the room as required; moving to the back of the room did not foreclose his ability to record the meeting. He was only removed for refusing to abide by the reasonable rules. The Court finds that Plaintiff does not provide a plausible claim the Defendants violated the PSA and this claim will be dismissed.

  c. **Motion for a More Definite Statement.**[5]

---

[5] In Plaintiff's Response to Defendants' Motion to Dismiss (ECF No. 27) Plaintiff claims he has filed a motion for a more definite statement, making the Motions moot. *Id.* at ¶¶ 3, 11, 13. It appears that Plaintiff is referencing the

In the Memorandum in Support of Defendants' Motion for a More Definite Statement (ECF No. 15), Defendants argue that, although the individually named Defendants have been identified in the Amended Complaint, Plaintiff has not "identif[ied] specific claims against the individuals or what conduct of the individuals supports asserted claims." *Id*. at 2. Defendants further add that, in the Operative Complaint, Plaintiff only vaguely asserts a violation of his Fourth Amendment rights, and adds some state law claims, but does not allege specific facts of Defendants violations.[6] *See id*. at 4-5. It is Defendants' request that Plaintiff be ordered to file a more specific complaint.

Plaintiff's Response to Defendants' Motion for a More Definite Statement (ECF No. 28) is sparse in that it reiterates what was written in the Operative Complaint. Plaintiff simply responds with reference to his reasoning in the Initial Complaint and an additional statement asserting that Defendants are now named in their individual capacity rather than official. *Id*. ¶¶ 8, 9, 13, 14).

In order for a motion for a more definite statement to be granted, the defendant must show that the pleading is "so vague or ambiguous that the defendant cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Here, Plaintiff fails to provide any facts of any individual supervisor's action that violated his rights, except President Supervisor Barzeski who acted to remove Plaintiff relying on the Resolution. A plaintiff must plead a defendant's personal involvement in the alleged deprivation of his constitutional right. *See, e.g., Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). That is because, as stated in the text of § 1983 itself, only a person who "subjects, or causes to be subjected" another person to a civil rights violation can be

---

Amended Complaint, which was filed before the Motion for a More Definite Statement. The present Motion for a More Definite Statement (ECF No. 14) made by Defendants is the only one of record and was responding to Plaintiff's Amended Complaint, part of the Operative Complaint. Therefore, it is not moot.

[6] This Opinion addresses the plausibility of Plaintiff's claims. Any defenses to claims not raised by Plaintiff are superfluous and will not be addressed by the Court.

held liable under § 1983. Thus, each defendant can be held liable only for his or her own conduct. *See, e.g., id.*; *see also Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016).

The Court found that Plaintiff has not alleged sufficient allegations against any individual defendant except President Supervisor Barzeski and the entity of Upper Yoder Township Supervisors. The Court also finds that the utility of a more definite statement is minimal and therefore, the Motion for a More Definite Statement (ECF No. 14) will be denied. The futility of a more definite statement, or what would amount to an amended complaint, is analyzed in the context of the Court's review below.

### IV. Amendment

Having determined that the Operative Complaint fails to state a claim against all defendant supervisors (save Barzeski), the Court must now determine whether further amendment of the Operative Complaint to include the supervisors would be futile. *See Hockenberry v. SCI Cambridge Springs/Pennsylvania Dep't of Corr.*, 2019 WL 2270345, at *3 (W.D. Pa. May 28, 2019) (stating "[t]he U.S. Court of Appeals for Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile").

The Court finds any attempt to amend the complaint to cure deficiencies would be futile. To allow Plaintiff a third attempt to assert different or additional actions of other supervisors on the night of the Board meeting were a violation of his First Amendment Rights, would necessarily cause his credibility to be called into question. Nor can Plaintiff claim to *know* that any particular individual supervisor wrote the Resolution that Plaintiff claims is violative of his rights.

### V. Conclusion

For the reasons stated above, Defendants' Motion to Dismiss (ECF No. 12) is **DENIED IN PART** and **GRANTED IN PART**, and Defendants' Motion for a More Definite Statement (ECF No. 14) is **DENIED**.

An appropriate Order will be entered.

Dated:  September 30, 2025                                    /s/ *Stephanie L. Haines*
                                                              Stephanie L. Haines
                                                              United States District Court Judge